## Case No. 1,788a.

### BRADLEY v. TRAMMEL.

[Hempst. 164.] [1]

Superior Court of Arkansas. Jan., 1822.

PROMISSORY NOTE — ASSIGNMENT — NECESSITY OF INDORSEMENT—ACTION ON—DEFENSES.

1. Under the statute of assignments (Geyer's Dig. 66), making all bonds, bills, and promis-

sory notes for money or property assignable, to authorize an assignee to sue in his own name, a note must not only be assigned and made over, but must be indorsed. Delivery without indorsement is not sufficient.

2. An indorsement is a written assignment on the back of the note, in the absence of which the holder, neither by statute nor the common law, can maintain an action against the promisor in his own name.

3. The statutes 3 & 4 Anne. c. 9, placing notes on the footing of inland bills of exchange, cited, and various cases in connection with them commented on.

4. The maker of a note may set up the same defence against it in the hands of an assignee, that he might make if it were held by the payee.

[Action by John M. Bradley against Nicholas Trammel on a promissory note. The defendant demurred to the declaration, and the demurrer was sustained.]

Before    JOHNSON    and    ESKRIDGE, Judges.

JOHNSON, Judge, delivered the opinion of the court.

This is an action of debt, brought by Bradley against Trammel, on the following promissory note: "For value received, I promised to pay John G. Jackson, or bearer, the sum of eight hundred and ninety dollars, six months after date. Witness my hand, this 17th of July, 1824. Nicholas Trammel." The assignment of the note is set out in the declaration in the following terms: "That the said John G. Jackson afterwards transferred and delivered the said note to the said plaintiff, Bradley, who thereby then and there became, and still is, the lawful bearer thereof, and entitled to demand and receive the said sum of eight hundred and ninety dollars from the defendant, Trammel."

The defendant has filed a general demurrer to the declaration, and the question presented is, whether the plaintiff can maintain this action in his own name. If he can, it is in virtue of the assignment of the note to him by Jackson, to whom it was executed. And if the assignment set out in the declaration is such as is required by our statute, there can be no doubt that the plaintiff is entitled in his own name to maintain the action. Our statute is in the following words: "All bonds, bills, and promissory notes, for money or property, shall be assignable, and the assignee may sue for them in the same manner as the original holder thereof could do. And it shall and may be lawful for the persons to whom the said bonds, bills, or notes are assigned, made over, and indorsed in his name, to commence and prosecute his action at law, for the recovery of the money mentioned in such bonds, bills, or notes, or so much thereof as shall appear to be due at the time of such assignment, in like manner as the person to whom the same were made payable, might or could have done." Geyer's Dig. 66. It

will be perceived that the statute makes all bonds, bills, and notes assignable, and authorizes the person to whom a bond, bill, or note is assigned, made over, and indorsed, to sue in his own name, in like manner as the payee or obligee might have done. Taking the whole of the acts together, it is manifest, that to enable the assignee to sue in his own name, the bond, bill, or note must be assigned, made over, and indorsed. A bare assignment and making over by delivery, without an indorsement, is not sufficient, because the statute requires the bond or note to be indorsed to enable the assignee to sue in his own name. To dispense with an indorsement, which is a written assignment on the back of the note (Instone v. Williamson, 2 Bibb, 83), and permit the assignee by delivery merely, to bring the action in his own name, would be to dispense with one of the plain and positive requisitions of the statute. How is the assignment set out in the present declaration? "That the said Jackson transferred and delivered the said note to the plaintiff, who thereby became the lawful bearer thereof." This may be true, and still the note may not have been indorsed: and the action cannot be maintained under our statute in the name of the assignee unless he is also the indorsee. The conclusion, then, to which we have arrived is, that the plaintiff cannot maintain this action by virtue of our statute authorizing the assignment of bonds, bills, and promissory notes.

Can he maintain the action according to the principles of the common law? Stewart Kyd, in his treatise on Bills of Exchange and Promissory Notes (page 18), makes the following remarks: "A promissory note may be defined to be an engagement in writing to pay a certain sum of money mentioned in it, to a person named, or to his order, or to the bearer at large; and at first these notes were considered only as written evidence of a debt; for it was held that a promissory note was not assignable or indorsable over, within the custom of merchants, to any other person, by him to whom it was made payable; and that if, in fact, such a note had been indorsed or assigned over, the person to whom it was so indorsed or assigned, could not maintain an action, within the custom, against the person who first drew and subscribed the note; and that, within the same custom, even the person to whom it was made payable could not maintain such action. But, at length, they were recognized by the legislature, and put on the same footing with inland bills of exchange, by 3 & 4 Anne, c. 9; made perpetual by 7 Anne, c. 25." In the case of Walmsley v. Child, 1 Ves. Sr. 341, Lord Chancellor Hardwicke says: "Where a note is payable to him or bearer, the bearer of the bill or note has not such a property as that he can maintain an action at law in his own name, but it must be in the name of the payee or his representatives." Chancellor Kent, in his Commen-

taries (volume 3, p. 73), says: "It was a question much discussed before the statute of Anne, whether notes were not, by the principles of the law-merchant, to be held as bills, and Lord Holt vigorously and successfully resisted any such attempt." In the case of Nicholson v. Sedgwick, 1 Ld. Raym. 180, decided seven years before the statute of Anne, the plaintiff brought an action of assumpsit, and in his declaration averred that the defendant made a note in writing, by which he promised to pay one Mason, or to the bearer thereof, £100; that Mason delivered the note to the plaintiff for £100 in value received, and that for the non-payment of this £100 by the defendant, the plaintiff brought this action, and upon a motion in arrest of judgment, the court held that the action could not be brought in the name of the bearer but that it ought to be brought in the name of him to whom the note was made payable. And the same point was resolved in the cases of Horton v. Coggs, 3 Lev. 299, and Hodges v. Steward, 1 Salk. 125, 12 Mod. 36. These cases are directly in point, and if regarded as authority, are decisive of the present question. The case of Clerke v. Martin, 2 Ld. Raym. 757, decided in the first year of Queen Anne, was an action on the case, and one count in the declaration was upon the custom of merchants, as upon a bill of exchange, and showed that the defendant gave a note, by which he promised to pay to the plaintiff or his order. Upon a motion in arrest of judgment, Lord Holt decided against the action, and said: "This note could not be a bill of exchange. That the maintaining of these actions upon such notes, were innovations upon the rules of the common law and invented in Lombard street, which attempted in these matter of bills of exchange, to give laws to Westminster Hall." Justice Gould concurred with him in arresting judgment. In the subsequent cases of Burton v. Souter, 2 Ld. Raym. 774, and Williams v. Cutting, Id. 825, it was held by the same court that promissory notes were not negotiable, within the custom of merchants. These adjudications are clear and explicit in affirming the doctrine, that according to the principles of the common law before the statute of Anne, promissory notes, whether payable to certain persons or order, or to a certain person or bearer, were not negotiable, so as to enable the assignee to sue upon them in his own name. Ashurst, J., in Carlos v. Fancourt, 5 Term R. 485, says: "Before the statute of Anne, promissory notes were not assignable as choses in action, nor could actions have been brought on them because the considerations do not appear on them; and it was to answer the purposes of commerce that those notes were put by the statute, on the same footing with bills of exchange." In Norton v. Rose, 2 Wash. [Va.] 248, Judge Roane says: "It is admitted that, on the principles of the common law, a chose

in action is not assignable; that is, the assignment does not give to the assignee a right to maintain an action in his own name." Judge Carrington, in the same case, observes: "That in England notes of hand were not assignable until 3 & 4 Anne, so as to enable the assignee to bring a suit at law in his own name. Courts of equity were, of course, resorted to, when the maker of the note was not precluded from setting up any equitable defence which he might have. Frequent attempts were made by the bankers and traders, to bring them within the custom of merchants, and to place them on the same footing of negotiability with bills of exchange. But the judges still considered them merely as the evidence of debt. At length the statute of Anne was procured, conformably with the wishes of the trading part of the community, making them assignable in like manner as bills of exchange. The likeness thus strongly sanctioned by legislative authority, produced similar decisions in cases where their negotiability was concerned." If, however, promissory notes were negotiable and assignable, and stood upon the footing of inland bills of exchange, according to the principles of the common law, adopting in this respect the lex mercatoria, why was it deemed necessary on the part of the merchants, to apply to parliament for the enactment of a statute raising them to the dignity of mercantile instruments? If the repeated adjudications of the king's bench, enlightened and adorned, as it then was, by the transcendent genius of Chief Justice Holt, were known to be erroneous, and contrary to former precedents, why did not the merchants, always a wealthy class of the community, make a different appeal, and before the lords in parliament, reverse and annul the erroneous judgment of the king's bench? They, however, acquiesced in these decisions. They were well aware that as they were attempting to innovate upon the rules of the common law, which forbid the assignment of a chose in action, they never could obtain the reversal and annulment of judgments pronounced in accordance with principles which had been settled for ages. They made a different appeal, and obtained an act of parliament of 3 & 4 Anne, c. 25, "giving like remedy on promissory notes as used on bills of exchange," and for the better payment of inland bills of exchange, to the following effect: "Whereas, it hath been held that notes in writing, signed by the party who makes the same, whereby such party promises to pay unto any other person, or his order, any sum of money therein mentioned, are not assignable or indorsable over, within the custom of merchants, to any other person, and that such person to whom the sum of money mentioned in such note is payable cannot maintain an action by the custom of merchants, against the person who first made and signed the same; and

that any person to whom such note shall be assigned, indorsed, or made payable could not, within the said custom of merchants, maintain any action upon such note against the person who first drew and signed the same. Therefore, to the intent to encourage trade and commerce, which will be very much advanced if such notes shall have the same effect as inland bills of exchange, and shall be negotiated in like manner, it is enacted, that from the first day of May, 1705, all notes in writing made and signed by any person or persons, body politic or corporate, or by the servant or agent of any corporation, banker, goldsmith, merchant, or trader, usually intrusted by him or them to sign such notes by him, her, or them, whereby such person or persons doth or shall promise to pay to any other person or persons, his, her, or their order, or to bearer, any sum of money mentioned in such note, shall be taken and construed to be, by virtue thereof, due and payable to any such person or persons to whom the same is made payable; and also every such note shall be assignable or indorsable over in the same manner as inland bills of exchange, and that the person to whom such sum is by such note made payable may maintain an action for the same in the same manner as they might do on an inland bill of exchange, made or drawn according to the custom of merchants, against the person who signed the same; and that any person to whom such note is indorsed or assigned, or the money therein mentioned ordered to be paid by indorsement thereon, may maintain an action for such sum of money, either against the person who signed such note, or against any of the persons who indorsed the same, in like manner as in cases of inland bills of exchange."

The recital in this act of parliament is almost conclusive evidence of the settled doctrine, that at common law promissory notes were not negotiable, nor assignable, so as to authorize the assignee to bring the action in his name. To maintain the doctrine that a promissory note, payable to a person named or bearer, was negotiable and assignable before the statute of Anne, the counsel for the plaintiff has mainly relied on two cases; one of them decided by the king's bench, in England; the other by the supreme court of New York. The first is the case of Grant v. Vaughan, 3 Burrows, 1518, and was an action on the case, brought by Grant, who inserted two counts in his declaration; one upon an inland bill of exchange, the other upon indebitatus assumptus for money had and received to his use. The writing relied upon by the plaintiff is thus described by the reporter: "The defendant, Vaughan, gave a cash note on his banker, to one Bicknell, or husband of a ship of his, which note was directed to Sir Charles Asgell, who was Vaughan's banker, and was worded thus: 'Pay to ship Fortune, or bearer so much.' "

Bicknell lost this note, which came into the hands of the plaintiff, for a full consideration by him paid without notice of its loss by the original owner. The court gave judgment for the plaintiff, who brought the action as bearer, and no doubt correctly. In the first place, the writing was in fact an inland bill of exchange; and secondly, if it was not a bill of exchange, but a promissory note, the statute of Anne had been long previously enacted, which placed it on the same footing with an inland bill of exchange. This decision cannot, then, be regarded as authority upon the present question, and all that fell from the court bearing upon it, is to be received as extrajudicial. It is true, that Lord Mansfield and Mr. Justice Wilmot, in discussing the case, clearly intimate an opinion that promissory notes, payable to J. S. or bearer, were negotiable before the statute of Anne, and controverts the decisions made by Lord Holt. But these doctrines of Lord Mansfield and Justice Wilmot, who are justly ranked among England's most talented and distinguished judges, are not to outweigh the numerous authorities directly upon the present question, which have already been cited. The case of Pierce v. Crafts, 12 Johns. 90, decided by the supreme court of New York, was an action of assumpsit on two promissory notes, payable to William Douglass, or bearer, and the bearer, Crafts, was allowed to maintain the action in his own name. But in New York the statute of Anne had been reenacted. So that this case also is no authority upon the question presented by the case at bar. Judge Platt there seems to indicate an opinion that these notes were negotiable, independent of the statute of Anne. This opinion is, however, extrajudicial, not called for by the case before him, and is not entitled to consideration as authority.

Our legislature has not deemed it expedient, like the parliament of England, to make any other interest bend to that of commerce. Our condition is essentially different, and a different policy has been wisely pursued. There are other interests which equally deserve the protection of the laws. Agriculture may be justly regarded as the great interest upon which the prosperity and happiness of this community mainly depends. With the statute of Anne before them, our legislature have not thought proper to make promissory notes assignable in like manner with inland bills of exchange. It has thought it consistent with the principles of justice, as well as with the dictates of enlightened policy, to permit the maker of a bond or note to set up the same defence against it in the hands of the assignee, that he could make against it in the hands of the obligee or person to whom he gave it. In other words, that the assignment of the note is not to operate to the prejudice of its maker, unless he, by his own consent, destroyed his equity or waived his rights. And why

should the assignment of a note affect the rights of the obligor or maker of the note? If it is tainted with fraud, or the consideration has failed, or a right of offset existed, why should the assignment or transfer of it to another have the effect of precluding these just defences to an action brought to recover the amount of the note? Is it not consistent with the principles of natural justice, that the assignee should stand in the shoes of the assignor and take the note, subject to all the equities and legal defences which existed against it in the hands of the assignor? This is the principle upon which courts of chancery have uniformly acted in permitting the assignment of a chose in action.

For these reasons, we are clearly of opinion that the demurrer ought to be sustained.